UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 07-CV-207-GFVT

ADAM GRIFFEY                                                                                    PLAINTIFF

VS:                         **MEMORANDUM OPINION AND ORDER**

HECTOR RIOS,  ET AL                                                                   DEFENDANTS

Adam Griffey is confined in the United States Penitentiary Big Sandy located in Inez, Kentucky ("USP-Big Sandy").  He has filed a prisoner *pro se* civil rights action pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).  The plaintiff has also filed an "Application to Proceed *In Forma Pauperis*," [Record No. 3].  The Court has addressed that motion by separate Order.

This matter is before the Court for initial screening.  28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

Under *Bivens*, the plaintiff must plead and prove two essential elements.  First, he must show that he has been deprived of rights secured by the Constitution or laws of the United States.  Second, he must demonstrate that the defendants allegedly depriving him of those rights acted under color of *federal* law.  *Bivens*, 403 U.S. at 397.

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys.  *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972).  The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff.  *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).  Under 28 U.S.C. §

1915(e)(2) a district court can dismiss a civil case at any time if it determines that the action is: (i) frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

NAMED DEFENDANTS

The named defendants are:  (1) Hector Rios, the warden of USP-Big Sandy; (2) "Mrs. Tolson," whom the plaintiff identifies as "Counselor, A-1 Unit";  (3) Bob Gourdouze, whom the plaintiff identifies only as "Captain," and (4) "Mr. Gooding," whom the plaintiff identifies as the Chaplain of USP-Big Sandy.[1]

CLAIMS

The plaintiff  challenges the conditions of his confinement at USP-Big Sandy.  The claims fall under the Eighth Amendment of the United States Constitution, which forbids cruel and unusual punishment.   The plaintiff also alleges that being required to eat the food served at USP-Big Sandy violates his religious beliefs. That claim would fall under the First Amendment of the United States Constitution.

RELIEF REQUESTED

In his Complaint, the plaintiff seeks $150,000.00 in damages and unspecified injunctive relief [Record No. 2-1, p.8].  In his Amended Complaint, the plaintiff seeks $1,000,000.00 in "compensatory and punitive damages" [Record No. 8, § VI, p.3].

CLAIMS ASSERTED
(A) Original Complaint [Record No. 2]

The Court counted ten separate claims in § III of the original complaint, but several of

---

[1]

Mr. Gooding is listed as a defendant in the Amended Complaint [Record No. 8].

2

the claims listed in that passage are repetitive of each other.  The plaintiff actually asserts

only six (6) distinct claims.  All of the claims fall under the ambit of the Eighth Amendment

of the United States Constitution, as they relate to the conditions of his confinement at USP-

Big Sandy.  The six claims raised in § III of the Complaint [Record No. 2] are as follows:

      (1)     Warden Rios allows inmates who are housed in the Special Housing

Unit  ("SHU") to eat either while they are standing up or while they are sitting on the floor.

      (2)     Warden Rios restricts phone use (presumably of SHU inmates).

      (3)     Warden Rios does not allow SHU inmates to use brooms, mops or rags

to clean the SHU area.

      (4)     Warden Rios refuses to grant "segregation or separation" for protective

custody inmates.

      (5)     The plaintiff has been confined in SHU where he is locked down 23

hours a day.  Plaintiff complains about his placement in SHU on the grounds that he has not

broken any rules, yet he also alleges that his life is in danger on the prison compound.

      (6)     The plaintiff complains that he is being denied a private cell in SHU.

      (B) Amended Complaint [Record No. 8]

The plaintiff alleges that between September, 2007 and October, 2007, Chaplain

Gooding violated his First Amendment right to observe the religion of his choice.  The

plaintiff does not identify what religion he follows.  The Court assumes that he observes a

Muslim religion, because: (1) he refers to the "Quran" (presumably the Koran) and (2) he

states that he is "forbidden by Allah to eat anything not properly slaughtered . . . The

3

Chaplain is denying me common fair {sic} which is vegetables and kosher foods."[Record No. 8, p.2].

Plaintiff alleges that because he is required to eat food prepared in a manner which is inconsistent with his religious beliefs, his First Amendment right to observe his religion is being violated. Plaintiff alleges that Chaplain Gooding refuses to require the prison food service to serve him "common fare" prepared in a manner which comports with his religious beliefs.

EXHAUSTION EFFORTS

The Court entered a Deficiency Order on October 17, 2007, directing the plaintiff to submit a six-month inmate account statement and to provide what, if any, documentation he had concerning his efforts to administratively exhaust his claims [*See* Order, Record No. 4]. In response, the plaintiff filed three handwritten letters [Record Nos. 5, 6 and 7] and an Amended Complaint [Record No. 8]. In his letters, the plaintiff requested that the Clerk of the Court issue subpoenas for witnesses and documents; provide him with the addresses of newspapers in Kentucky and other states; provide him with a copy of the *Bivens* decision; and undertake other administrative tasks on his behalf [Record No. 6].

As for the Eighth Amendment claims asserted in the original Complaint, the plaintiff alleges that his counselor (presumably Defendant Tolson) refuses to bring grievance forms to the SHU area when requested to do so. The plaintiff alleges that he has "written several cop-outs asking for grievance forms, but none replied. And the captain makes the rules back in the Special Housing Unit." [Complaint, Record No. 2-1, p.3].

4

_____ In his letter filed as Record No. 5, he generally asserted that USP-Big Sandy officials "will not answer any of my grievances . . . what should I do ?" [*Id*., p.1).  Plaintiff then explained in a bit more detail what he did in terms of administrative exhaustion. He stated:

> "I've written to my counselor Mrs. Tolson for a redress of a grievance.  I have gotten no response. I received a BP'9 from counselor Joiner and wrote the warden to no avail. I've been trying to get grievances but no one will give me what I ask for.  No one has tried to remedy this situation here.
>
> Mrs. Tolson-Counselor
> Mr. Gourdouze-Capt.
> Mr. Rios-Warden
>
> None of these people will grant me a redress of a grievance.  Therefore I can not send copies of them because they won't give me any."

[Record No. 5, p.2].

As for the First Amendment claims subsequently asserted in the Amended Complaint, the plaintiff alleges that "I have written several cop-outs and issued a BP'8 grievance which has not been returned." [Record No. 8, p.3].

DISCUSSION

A. Claims Asserted in Original Complaint

_____It is unclear whether the plaintiff has fully and properly exhausted the six Eighth Amendment claims challenging the conditions of his confinement in SHU.  However, it is unnecessary for the Court to analyze the sufficiency of the plaintiff's exhaustion efforts on these claims.  For four reasons, they fail to state a claim upon which relief can be granted.

1. Security Classifications Are Discretionary

Any complaint about being confined in SHU in the first place lacks merit.  The

plaintiff has no constitutional right to be held in a specific security classification. *See Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L. Ed.2d 675 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L. Ed.2d 236 (1976). *See also Smith v. Sapp*, 1998 WL 384620 (6th Cir.1998) (prisoner "cannot invoke the procedural safeguards of the Due Process Clause as to those incident reports resulting in his placement in disciplinary segregation because he has no liberty interest, state-created or otherwise, in remaining free of disciplinary segregation").

2. <u>Atypical Conditions Must Exist</u>

In order for any condition of confinement to qualify as an Eighth Amendment violation, the condition must impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L. Ed.2d 418 (1995).[2]  In order to assert an Eighth Amendment claim, a plaintiff must demonstrate  the existence of a severe deprivation, such as the denial of "essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Neal v. Miller*, 778 F. Supp. 378, 382-83 (W. D. Mich. 1991) (citing *Rhodes*

---

[2]

In *Sandin*, a state prisoner challenged his 30-day sentence to segregation after the prison adjustment committee followed a prison regulation in determining Sandin's guilt.  The question was whether the regulation created a liberty interest which would have entitled him to substantial due process procedures established in *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974).

The Supreme Court determined that neither the Due Process Clause nor the Hawaii prison regulation at issue presented a liberty interest such as to trigger due process procedural protections set forth in *Wolff*.  The Court stated that " . . . Conner's discipline in segregated confinement did not represent the type of atypical, significant deprivation in which a state might conceivably create a liberty interest . . ." *Id*. at 483-84.  *Sandin* focused not on the content of the regulations, but on the "nature of the deprivation" visited upon the inmate.  *Id*. at 481.

*v. Chapman*, 452 U.S. 337, 347-48 (1981)); *see also Strauss v. Ray*, 221 F.3d 1336,**2 (6th

Cir. (Tenn.) June 19, 2003) (Table) (Unpublished Disposition).

To the extent that the plaintiff complains about the duration of his confinement in

SHU, that claim fails. Under the *Sandin* analysis, housing assignments and classification

decisions (such as extended placement in disciplinary segregation and transfers to higher

security prisons) have been upheld as the "ordinary incidents of prison life." *See Merchant v.*

*Hawk-Sawyer*, 37 Fed. Appx. 143, 145 (6th Cir. (Ky.), May 7, 2002) (not selected for

publication in the Federal Reporter) (Merchant's maximum security classification, 21-month

confinement in the special housing unit and transfer to a more secure facility were simply the

"ordinary incidents of prison life" and did not implicate liberty interest protected by

Fourteenth Amendment); *Whitford v. Boglino*, 63 F.3d 527, 532-33 (7th Cir.1995)

(six-month confinement in disciplinary confinement was not an atypical and significant

hardship under Sandin); *Scales v. District of Columbia*, 894 F. Supp. 14 (D.D.C.1995) (four

months insufficient); *Winters v. Godinez*, 1995 WL 382505 (N.D.Ill.1995) (six months

insufficient); *Stone-Bey v. Barnes*, 913 F. Supp. 1226 (N. D. Ind.1996) (one year

insufficient); *Carter v. Carriero*, 905 F. Supp. 99 (W.D.N.Y.1995) (nine months

insufficient).

3. Complaints Do Not Meet Threshold

None of the specific conditions of confinement in SHU about which the plaintiff

complains (eating while standing or sitting on the floor; restricted phone use; lack of brooms

or rags to clean area; 23 hour lock down status; and refusal to place him in a private cell),

meet the standard of an Eighth Amendment claim.  The special security needed to supervise prisoners in higher levels of custody will necessarily result in fewer privileges (such as restricted phone access) for them than those normally provided to general population inmates.  *See Allgood v. Morris*, 777 F.2d 1250, 1256 (4th Cir.1984).

"The federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable." *Neal v. Miller*,  778 F. Supp. at 383;  *See also Abdur-Reheem-X v. McGinnis*, 198 F.3d 244, 1999 1045069, **3 (6th Cir. (Mich.) November 12, 1999) (Table) (Unpublished Disposition) ("The Eighth Amendment protects Abdur-Reheem-X from conditions of confinement that are health threats; it does not shield him from conditions of confinement that cause mere discomfort.").

The plaintiff alleges in his original complaint that "his life is in danger on the compound." [Complaint, Record No. 2-1, p.3].  Thus, to the extent that the prison has removed the plaintiff from the general population and placed him in SHU, the prison is in fact responding to the plaintiff's presumed status as "protective custody" inmate.  As explained above, classification decisions are clearly a matter of the exercise of prison officials' discretion.

The plaintiff's demand for a private cell also lacks merit.  It is best disposed of by the United States Supreme Court's comments in *Bell v. Wolfish*, 441 U.S. 520 (1979):

> We disagree with both the District Court and the Court of Appeals that there is some sort of "one man, one cell" principle lurking in the Due Process Clause of the Fifth Amendment. While confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions

amounted to punishment, nothing even approaching such hardship is shown by this record.

*Bell v. Wolfish*  441 U.S. at 542.

The plaintiff's specific complaint about being in lockdown status for 23 hours a day while confined in SHU fails under the Eighth Amendment.  The same claim has been rejected in many other cases.  *See Burnett v. Wilson*, 2007 WL 437921, * 2 (N.D. Ohio, February 7, 2007) ("Mr. Burnett asserts that his placement in the infirmary under 23 hours per day lock down for 35 days amounted to cruel and unusual punishment. Because placement in segregation is a routine discomfort of prison life, that action alone is insufficient to support an Eighth Amendment claim."); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir.1996) (housing plaintiff in cellblock where he experienced frequent lockdowns, restricted access to law library, denial of educational opportunities, and loss of social and rehabilitative activities did not impose atypical and significant hardships); *Williams v. Ramos*, 71 F.3d 1246, 1248-49 (7th Cir.1995) (holding that segregation unit in which plaintiff was generally locked in cell 24 hours per day, was handcuffed if permitted to leave, and precluded from activities available to other inmates did not violate Constitution); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir.1994) (finding that confining prisoners to cells twenty-three hours per day did not violate the Eighth Amendment absent other aggravating conditions); and *Collazo-Leon v. United States Bureau of Prisons*, 51 F.3d 315, 316 & n.1, 317 (1st Cir.1995) (holding that imposition of sixty-day term of disciplinary segregation, entailing lockdown twenty-three hours a day, as result of attempted bribe and attempted escape did not amount to impermissible punishment of pretrial detainee).

9

4. No Loss of Good Time Credits

It does not appear from the complaint that the plaintiff has alleged the loss of any good time credits. Absent such a claim, the plaintiff's complaints about his confinement in SHU fail to state a claim upon which relief can be granted.   *See Sandin v. Conner*, 515 U.S. at 484-86; *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir.1997); *Wilson v. Wellman*,  238 F.3d 426, 2000 WL 1829265, **3 (6th Cir.(Mich.) December 6, 2000) (Unpublished Disposition) (Plaintiff did not suffer the loss of good-time credits or any other action affecting the duration of his sentence; no due process claim because disciplinary segregation did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life); *Ford v. Harvey*, 106 Fed. Appx. 397 (Not selected for publication in the Federal Reporter) (August 6, 2004) (State prisoner's placement in disciplinary confinement did not implicate a liberty interest entitled to due process protection, where it was neither accompanied by loss of good time credits nor lasted for a significant period of time causing an unusual hardship on prisoner).

In summary, the claims asserted in the original complaint are frivolous and lack merit. They will be dismissed with prejudice. 28 U.S.C. § 1915(e)(2)(ii).

B. Claim Asserted in Amended Complaint

The plaintiff alleges that his First Amendment right to religious observance is being violated through the denial of specially prepared food.  The claim is premature.

The multi-step administrative remedies available to inmates confined in BOP

institutions are set out in  28 C.F.R.  § 542.13-15.[3]   The Prison Litigation Reform Act

("PLRA"), 42 U.S.C. § 1997e(a), requires state and federal prisoners bringing actions

concerning prison conditions, and any other incident to prison life, such as excessive force, to

exhaust all available administrative remedies before suing in federal court.  *See Porter v.*

*Nussle*, 534 U.S. 122 S.Ct. 983 (2002); *Lavista v. Beeler*, 195 F,3d 254, 256 (6th Cir. 1999);

*Ricks v. Peterson*, 26 Fed. Appx. 588, 2001 WL 1345089 (8th Cir. (Minn.) November 2,

2001) (Not selected for publication in Federal Reporter) (inmate was required to exhaust

administrative remedies before bringing suit under *Bivens* based on inadequate conditions of

confinement).

        Under federal law, it is insufficient for a prisoner to merely claim that grievances were

not answered satisfactorily or to begin the grievance process and not finish it.  For any issue

the plaintiff intends to raise, he must demonstrate exhaustion, or his attempts at exhaustion,

before he can be considered to have substantially complied with the law.  *See Wyatt v.*

*Leonard*, 193 F.3d 876 (6th Cir. 1999).  The Supreme Court has ruled that exhaustion of

----

[3]

        Section 542.13(a) demands that an inmate first informally present his complaint to the staff
[BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a
request for an administrative remedy.  If the inmate cannot informally resolve his complaint, then
he may file a formal written request to the Warden [BP-9].  *See* § 542.14(a).  If the inmate is not
satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not
satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of
General Counsel [BP-11].  *See* § 542.15.
        The administrative procedure includes established response times.  § 542.18.  As soon as an
appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and
General Counsel, 40 days.  Only one extension of time of 20-30 days, in writing, is permitted the
agency.  If the inmate does not receive a response within the allotted time, including extension, he
may consider the absence of response as a denial at that level.  *Id.*

administrative remedies is required for *all* prisoner suits.  *See Porter v. Nussle*, 534 U.S. at 524.

Exhaustion under the PLRA is mandatory and unexhausted claims cannot be brought in federal court.  *Jones v. Bock*, 127 S.Ct. 910, 919 (2007); *Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006).  The Supreme Court has emphasized that the exhaustion requirement found in the PLRA mandates "proper exhaustion," which demands compliance with prison procedural rules.  *Ngo*, 126 S. Ct. at 2387.

In *Jones*, the United States Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA. and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id*. at 921 (overruling Sixth Circuit precedent to the contrary). While focusing on the pleading standard for 42 U.S.C. § 1997e exhaustion, *Jones* also guided lower federal courts as to screening prisoner complaints under 28 U.S.C. § 1915A.

The Supreme Court noted that its ruling does not mean that prisoner complaints will never be subject to *sua sponte* dismissal for failure to exhaust administrative remedies. The Court explained:

> A complaint is subject to dismissal for failure to stale a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, see Fed. Rule Civ. Proc. 8(e). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3rd Cir.2001) ("[A] complaint may be subject to dismissal under Rule

12

12(b)(6) when an affirmative defense ... appears on its face' " (internal quotation marks omitted)). *See also Lopez-Gonzalez v. Municipality of Comerio*, 404 F.3d 548, 551 (1st Cir.2005) (dismissing a complaint barred by the statute of limitations under Rule 12(b)(6)); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2nd Cir.1998) (dismissing a complaint barred by official immunity under Rule 12(b)(6)). See also 5B C. *Wright & A. Miller, Federal Practice and Procedure* § 1357, pp. 708-710, 721-729 (3d ed.2004).

*Jones*, 127 S. Ct. at 920-21 (Emphasis added).

Other district courts, including courts within the Sixth Circuit, have recently interpreted this language as meaning that even though exhaustion of administrative remedies need not be pled specifically in the complaint, *sua sponte* dismissal - -for failure to state a claim upon which relief may be granted - - is appropriate on initial review where it is apparent *from the face of the complaint* that an inmate has failed to exhaust the prison grievance procedure. *Whitaker v. Gannon*, 2007 WL 274439, *2 (S. D. Ohio, September 19, 2007)(Only Westlaw citation currently available); *Spaulding v. Oakland County Jail Medical Staff*, 2007 WL 2336216, *3 (E. D. Mich.2007) (applying *Jones* and dismissing complaint on initial screening for failure to exhaust because it was clear from the face of the complaint that the prisoner had not exhausted his administrative remedies prior to filing suit); *Ghosh v. MeClure*, 2007 WL 400648, at *6, n. 3 (S. D. Tex.2007) ("Nothing in the Supreme Court's decision in *Jones* precludes a reviewing court from raising the issue of exhaustion sua sponte or dismissing the complaint without service on the defendants where the pleadings and the record confirm that a prisoner has violated 42 U.S.C § 1997e(a) by failing to exhaust his remedies before filing suit."); *Tanner v. Fed. Bureau of Prisons*, 475 F. Supp.2d 103, 105 (D.D.C.2007); *Leary v. A.R.U.S. Conerly*, 2007 WL 1218952 (E. D. Mich. 2007) (lack of

13

exhaustion was obvious from the face of a pleading, requiring the defendant to file a motion to dismiss for failure to exhaust would be a waste of defendants' and the Court's time and resources); and *Funk v. Washburn*, 2007 WL 1747384, *1 (M. D. Fla.2007).

Here, even with the benefit of the *Jones* case, it is apparent from the face of the plaintiff's Amended Complaint that his claims alleging a First Amendment violation - - through the denial of specially prepared food - - are premature.  He states in the Amended Complaint that this issue arose between September, 2007 and October, 2007. He states that he has not received a response from his cop-out or from his counselor.  Based upon the time frame described in the amended Complaint, the counselor probably has not even had time to respond.  The complete BOP process takes at least 90 days from start to finish, assuming no extensions are involved.  Complete and proper exhaustion as required by *Ngo* and *Jones* is simply impossible under these facts.

The First Amendment claim will be dismissed *without* prejudice to the plaintiff properly exhausting the issue.

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)     The Clerk of the Court is directed to send the plaintiff a copy of *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

(2)     The plaintiff's Eighth Amendment claims asserted in his original complaint [Record No. 2] are **DISMISSED WITH PREJUDICE**.

(3)     The plaintiff's First Amendment claims asserted in his Amended Complaint

14

[Record No. 8] are **DISMISSED WITHOUT PREJUDICE**.

     (4)     This action is **DISMISSED** from the docket of the Court.

     (5)     Judgment shall be entered contemporaneously with this Memorandum Opinion

and Order in favor of the defendant.

     This the 1st day of November, 2007.

**Signed By:**

***Gregory F. Van Tatenhove***

**United States District Judge**